UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VENA L. WARD,<br><br>    Plaintiff,<br><br>    v.<br><br>RAY MABUS,<br><br>    Defendant. | CASE NO. C15-5477 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS |

This matter comes before the Court on Defendant Ray Mabus's ("Mabus") partial motion to dismiss (Dkt. 16).[1] The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 9, 2015, Plaintiff Vena Ward ("Ward") filed a complaint against Mabus, in his official capacity as Secretary of the Navy. Dkt. 1. On July 24, 2015, Ward filed an amended complaint, alleging discrimination, hostile work environment, and retaliation in

---

[1] For the reasons explained below, the Court treats Mabus's motion to dismiss as one for summary judgment.

ORDER - 1

violation of the Rehabilitation Act and Title VII of the Civil Rights Act.  Dkt. 5 ("Comp.") ¶¶ 18–51.

Ward alleges her "promotion to GS-12[2] was repeatedly delayed without explanation." *Id.* ¶ 10.  Ward also claims she "was frequently denied opportunities that others outside of her protected classes were provided," including "temporary duty assignments, scheduling, and position assignments." *Id.* ¶ 11.  Ward further alleges her supervisors "restricted her from working weekends, restricted her from working aboard ships, and relegated her to an isolated position that further ostracized her from the rest of the employees" while the Equal Employment Opportunity Commission ("EEO") was investigating her complaint. *Id.* ¶ 15.

On May 19, 2016, Mabus filed a partial motion to dismiss.  Dkt. 16.  On June 6, 2016, Ward responded.  Dkt. 18.  On June 10, 2016, Mabus replied.  Dkt. 21.

## II. FACTUAL BACKGROUND

In May 2005, the Department of the Navy ("Navy") hired Ward as a nuclear engineering student trainee at the Puget Sound Naval Shipyard.  Dkt. 19, Declaration of Vena Ward ("Ward Dec.") ¶¶ 3–4, 7.  Ward is an African-American woman with a vision impairment.  *Id.* ¶¶ 1–2.

Ward worked as a student trainee during the summers of 2005, 2006, and 2007. *Id.* ¶ 4.  In June 2008, the Navy hired Ward as a full-time nuclear engineer at GS-07.  *Id.* She was assigned to the position of nuclear trouble desk engineer at GS-11 in August

---

[2] "GS" stands for the General Schedule, which is the basic pay scale for employees of the federal government. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 459 n.2 (1995).

2010, and then to nuclear TGI writer at the same GS level in March 2011.  Comp. ¶ 9; Dkt. 17, Declaration of Jamal Whitehead ("Whitehead Dec."), Ex. 1 at 4.  Ward has received annual EEO training as a Navy employee.  Dkt. 20, Declaration of Jacob Downs ("Downs Dec."), Ex. F at 7.

In April 2011, Ward attended her sister's graduation from an Air Force course in Ohio.  Ward Dec. ¶ 25.  She subsequently received a letter of reprimand regarding her absence from work.  *Id.*

By mid-2012, Ward felt that her managers were deliberately delaying her promotion to GS-12 because of her race, gender, and disability.  *Id.* ¶ 34.  Ward talked to Edward Corich ("Corich") and Lisa Moore ("Moore") about her concerns and avenues for redress.  *Id.* ¶¶ 30, 33.  Corich was one of Ward's supervisors, and Moore was her administrative officer and building manager.  *Id.* ¶¶ 12, 32.

According to Ward, Corich told her "it was not a good idea" to file an EEO complaint because it "just ruins peoples' careers" and "we'll have to set you in a corner by yourself if you file a complaint because no one will want to work with you."  *Id.* ¶ 30.  Ward further states:

> I understood that Ms. Moore handled EEO issues for employees assigned to [my department].
>
> \*   \*   \*
>
> I also spoke with Ms. Moore . . . about my avenues of redress regarding my delayed promotion.  I asked Ms. Moore who I should bring any complaint to about issues surrounding delays in the promotion process.  She replied, "if you have a complaint, you talk to me."  I explained further the circumstances surrounding my oral boards and delayed promotion.  She told me my concerns seemed really one-sided and therefore I did not have a valid complaint.  She told me that I could not say that I was being kept from promotion because of race, gender or any other reason because I do

> not know exactly what the managers are thinking. Based on my discussions with Ms. Moore, I believed at the time that I did not have a right to bring an EEO complaint. She held herself out to me as if she was the person to whom EEO complaints were to be made and that she would not entertain mine. She made it seem that she was the "be all, end all" of the complaint process, and did not inform that regardless of her opinions as the building man[a]ger and code administrative officer, I could still complain[] to the EEO office. It was only later in 2014 when I complained to Arch McCleskey about the use of the word "nigger" in the workplace and other issues that he (reluctantly) provided me with the form directing me to call the EEO office—not Lisa Moore.
>
> \* \* \*
>
> My meeting with Arch McClesky on September 10, 2014, was the first and only time I had ever been given information on how to file an EEO complaint. Despite having approached Mr. Corich and Ms. Moore on numerous prior occasions, I was never told I had the right to file a complaint myself nor had I been directed to the appropriate contact information for the EEO office. Indeed, I had been dissuaded from filing and told that I had no claim.

*Id.* ¶¶ 32–33, 56. Ward was promoted to GS-12 on December 30, 2012. Whitehead Dec., Ex. 3.

On October 1, 2014, Ward filed an informal EEO complaint, in which she alleged discrimination "based on race, gender, and disability" through "emails, comments, and missed promotions." Whitehead Dec., Ex. 4 at 2. After engaging in the informal complaint process, Ward filed a formal complaint with the Navy's EEO office on January 6, 2015. Whitehead Dec., Ex. 2. Ward continues to work as a nuclear engineer at the Shipyard. Ward Dec.¶ 2.

### III. DISCUSSION

Mabus seeks to dismiss Ward's disparate treatment and retaliation claims to the extent they are based on discrete acts that occurred outside of the limitations period. Dkt. 16 at 7, 9.

**A.   Materials Outside Pleadings**

When deciding a motion to dismiss, a court's consideration is limited to the pleadings. Fed. R. Civ. P. 12(d). A motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 if either party submits materials outside the pleadings in support of or in opposition to the motion, and if the district court relies on those materials. Fed. R. Civ. P. 12(b)(6); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643 n.4 (9th Cir. 1989) ("The proper inquiry is whether the court relied on the extraneous matter.").

In this case, both parties have submitted material outside the pleadings. Having considered this extrinsic evidence, the Court converts Mabus's motion to dismiss into one for summary judgment.

**B.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**C.   Administrative Exhaustion**

In order to bring a claim under the Rehabilitation Act or Title VII, a federal employee must exhaust her administrative remedies.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003).  This exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."  *Freeman v.*

*Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002)).

### 1. EEO Complaint

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984)). "Although allegations of discrimination not included in a plaintiff's EEOC charge generally may not be considered by a federal court, subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Freeman*, 291 F.3d at 636 (quoting *B.K.B.*, 276 F.3d at 1100).

Mabus asserts, without any argument, that Ward's allegations concerning her delayed promotion to GS-12 "are newly raised in her judicial complaint." Dkt. 16 at 9. In response, Ward argues the evidence in the record shows she included her "missed promotion" in her informal EEO complaint and the EEO counselor acknowledged her allegations regarding her delayed promotion during the subsequent investigation. Dkt. 18 at 18–19. Mabus does not address this issue further in his reply brief. *See generally* Dkt. 21.

It is unclear from the briefing whether Mabus is conceding Ward adequately raised her complaints about her GS-12 promotion during the EEO process. In any event, Ward

has pointed to evidence that contradicts Mabus's assertion that Ward's allegations regarding her delayed promotion to GS-12 are newly raised in this case. *See, e.g.*, Whitehead Dec., Ex. 4 at 1; Downs Dec., Exs. F & G. Mabus has therefore failed to show an absence of questions of material fact or that he is entitled to judgment as a matter of law on this issue.

### 2. Timeliness of Claims

Federal regulations provide that a federal employee must notify an EEO counselor of discriminatory conduct within forty-five days of the alleged conduct. *Cherosky*, 330 F.3d at 1245; *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). If the matter is not resolved, the employee may submit a formal administrative complaint. *Cherosky*, 330 F.3d at 1245; *Sommatino*, 255 F.3d at 708. Failure to timely contact an EEO counselor is fatal to a federal employee's discrimination claim. *Cherosky*, 330 F.3d at 1245.

In some circumstances, a federal employee may bring suit based on discriminatory events that fall outside of the forty-five-day limitations period. Under the continuing violation doctrine, a plaintiff may seek relief for the cumulative effects of repeated conduct that began outside the limitations period and continued into the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002). A hostile work environment is a classic example of a continuing violation because it is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117 (internal quotation marks omitted). The doctrine, however, does not apply to discrete acts that are time barred, even when they relate to

acts within the limitations period. *Id.* at 113.  "[T]ermination, failure to promote, denial of transfer, or refusal to hire" are examples of discrete acts because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* at 114 (internal quotation marks omitted).

In this case, Ward notified an EEO counselor of workplace discrimination on October 1, 2014.  Mabus argues Ward's disparate treatment and retaliation claims are untimely to the extent they are based on discrete acts that occurred before August 17, 2014.  Dkt. 16 at 7, 9.  Specifically, Mabus contends that Ward's allegations about her work assignments between 2005 and 2008, her letter of reprimand in 2011, her GS-12 promotion in 2012, and any denials of transfer before August 17, 2014, are time barred. *Id.* at 9.

Ward does not dispute that her claims based on her work assignments, denials of transfer, and letter of reprimand are untimely. *See* Dkt. 18.  Indeed, each of these incidents constitutes a discrete act that occurred outside of the forty-five-day limitations period. *See Morgan*, 536 U.S. at 114.

Ward, however, contends that her allegedly delayed promotion to GS-12 is part of an ongoing hostile work environment and therefore the continuing violation doctrine applies.[3]  Dkt. 18 at 10–13.  This argument is unavailing.  In *Morgan*, the Supreme Court

---

[3] To the extent Ward argues Mabus's motion should be continued so that she may obtain additional evidence showing the pattern of her delayed promotion, Dkt. 18 at 22–23, the evidence she seeks is not material to whether the continuing violation doctrine applies. *See Lyons v. England*, 307 F.3d 1092, 1107 (9th Cir. 2002) ("A practice, though it may extend over

explained that the failure to promote an employee based on discrimination constitutes a discrete act.  536 U.S. at 114.  Although the alleged failure to promote Ward may have occurred over a period of time or involved a series of related acts, each alleged failure to promote Ward to GS-12 remains a discrete act of discrimination that occurred before August 17, 2014.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004); *Lyons*, 307 F.3d at 1107–08.  Accordingly, the continuing violations doctrine does not apply to Ward's delayed promotion claim.

**D.     Equitable Estoppel**

Ward argues Mabus should be equitably estopped from asserting that her delayed promotion claim is untimely.  Dkt. 18 at 20–22.  Ward contends that she relied on Moore and Corich's representations that she did not have a valid claim about her promotion to GS-12 and that such a claim would not be considered.  *Id.*

"Filing a timely charge of discrimination with the EEOC is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."[4]  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011).  The doctrine of equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1116 (9th Cir. 2000),

---

time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period.").

[4] In his reply, Mabus argues equitable tolling does not apply.  Dkt. 21 at 9–11.  Ward has not relied on the defense of equitable tolling and Mabus raised the issue for the first time in his reply brief.  The Court may properly decline to consider this issue.  *See United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993) ("[A] party may not make new arguments in the reply brief.").

*overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001). Equitable estoppel requires consideration of a non-exhaustive list of factors, including:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (quoting *Santa Maria*, 202 F.3d at 1176). "[T]he plaintiff must point to some fraudulent concealment, some active conduct by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051–52 (9th Cir. 2008) (internal quotation marks omitted).

      With respect to reliance, Ward states that she talked to Moore about filing an EEO complaint regarding her promotion to GS-12 and was told she did not have a valid claim. Ward Dec. ¶ 33. Ward further asserts she believed she did not have a right to bring an EEO complaint because Moore said she was the person to whom EEO complaints were to be made and she would not entertain hers. *Id.* ¶¶ 6, 33. Whether it was reasonable for Ward to believe Moore was the "be all, end all" of the EEO complaint process and she was therefore blocked from filing an EEO complaint are triable issues of fact that preclude summary judgment.[5]

---

[5] Mabus submits evidence of Ward's EEO training records in support of his reply. Even if the Court were to consider this evidence, the evidence further shows that a triable issue of fact exists with respect to the reasonableness of Ward's reliance.

1   As for misleading conduct, Mabus argues Ward has failed to point to any
2   deceptive actions.  Dkt. 21 at 8.  Although Ward has not presented direct evidence of an
3   improper purpose, a reasonable juror could nevertheless find that Moore, as Ward's
4   administrative officer and building manager, had constructive knowledge that her
5   representations were misleading and would prevent Ward from filing an EEO complaint
6   about her GS-12 promotion.

7   In sum, Ward has submitted sufficient evidence to create material questions of fact
8   as to whether equitable estoppel applies to her delayed promotion claim.  The Court
9   therefore denies Mabus's motion with respect to that claim.  To the extent Ward's
10  disparate treatment and retaliation claims are based on other discrete acts that occurred
11  before August 17, 2014, the Court grants Mabus's motion for the reasons discussed
12  above.

### IV.   ORDER

Therefore, it is hereby **ORDERED** that Mabus's motion to dismiss (Dkt. 16) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 21st day of July, 2016.

BENJAMIN H. SETTLE
United States District Judge